Good morning, Your Honors. May it please the Court, Jagdeep Sekhar on behalf of the petitioner Racine Zoghbi. Your Honors, this case involves a Lebanese national who was 15 years old at the time when he was stopped by Hezbollah militants, detained, whipped, threatened with being kidnapped, tortured, or even killed because of his religion and because of a political opinion imputed to him. Counsel, could I interrupt you to ask a question? In the very brief opinion of the BIA, they indicated that he might have in an application for adjustment of status. Did he file an application for adjustment of status? Yes, Your Honor, and unfortunately it seems like he waived his entitlement to adjustment of status, and this is sort of intertwined with the issue of the parole. What I was really wanting to focus on, if in fact there is an application for adjustment of status that's in process, we often will either stay the proceeding or send it off to mediation. But in this case, there is none. Is that right? Well, Your Honor, if I may for a moment. Well, that's kind of a yes or a no. Okay. The government, the Department of Homeland Security does have jurisdiction to grant him adjustment of status within their discretion. It's not with the Department of Justice anymore, the court system. I understand that. But they haven't, and we are trying to advance it, but we've been unsuccessful in getting them to adjudicate the application because he is in under a final order of removal. So the application has been submitted to the Department of Homeland Security, and we have been checking on the status of it, but the answers we get of the people at the window, which is as far as we get in these cases with respect to the adjudication of it, is that they are not willing to adjudicate it because he is under a final order of removal. Arising out of this proceeding. Yes, Your Honor. Generally, and now I'm talking outside the record, but when there are applications for adjustment of status that are within the discretion of the Department of Homeland Security, they will adjudicate them for the most part unless, but they don't do it if someone is under a final order of removal. It seems to be kind of a bright line that they draw. It's a rare circumstance that they would adjudicate an application for adjustment of status when the person is in the posture of Mr. Zogby. Okay. But it's been submitted. Yes, Your Honor. And intertwined with the issue of how he lost his entitlement to adjustment is his return to Lebanon. If he had not returned to Lebanon, then the Immigration Court or the Board of Immigration Appeals would have had jurisdiction over his application for adjustment of status. Wait. That's what I thought you were going to say. Let me see if I can clarify this. Yes, Your Honor. I thought you were, in answering Judge Fletcher's question before you got interrupted, I thought what you were going to say was that the adjudication of the status adjustment petition was tied up with the parole. Yes, Your Honor. So if we were to undo the parole aspect of the case, would that free up the process of adjudication and the application to adjust status? I wish it was that simple, Your Honor. That simple. It's the – when you make a, quote, unquote, entry, which the family originally did, he would have been eligible to adjust status. But because he left the United States and returned with permission, then you're not deemed – your entry is erased and then you're an alien who's been paroled. Regardless of whether it's determined that the application was abandoned. Yes, Your Honor. Okay. So just having – just leaving the country is enough. Leaving the – because it's called advanced parole, Your Honor, so you go and you come back and now you're no longer an alien who's entered. Okay. You're admitted into the United States for the adjudication of whatever application you were admitted for. In this case, it was an asylum application. Okay. And, Your Honor, on that point, it appears to me that the court didn't – the immigration was always calculus when he returned to Lebanon. If that's – if that's true, I mean, then that doesn't become a factor and one needs to look at the merits of the application. Yes, Your Honor. It strikes me that that's where you got the greatest degree of difficulty, in that this was a – basically a single incident, war-related in the main, perhaps partially religion, but then the evidence indicates that the Muslims who were in his traveling pack were slapped around also, only not quite as badly as he was. But they just wanted him out of that sector, and that was an incident that's 15 years old. And his family and he have both returned quite without incident to the country. And as long as he stays out of that sector, what's the problem? I mean, that to me, in a nutshell, is your difficulty. Yes, Your Honor. The difficulty in the case is that we are dealing with a single issue – I mean, sorry, a single incident. Yes. And that single incident, though, under the law of this circuit, rises to the level of persecution because it was a very severe incident. And when you take into the other factors, the applicant's age, what was said to him, the anti-Christian comments made to him, that is enough for us to get to the threshold of the prosecution. And the demigration judge's decision is not that clear, but I think we reached that threshold. See, it's hard for me to see how it does because he – I mean, the incident was scary, obviously, and very unpleasant and frightening. But it was reported, the police followed up on it, and they only stopped their investigation when they found out that he had split. So there's really nothing to lay this – to say that the government couldn't have controlled it out of – Well, Your Honor, I think clearly the government – I don't think the Lebanese police had any control over the Hezbollah militia during the Civil War. Probably not, but they did report it. He did report it, and they did act on the report. Your Honor, they took the report. That's all they could – that's the extent of their did not have the power to protect them from Hezbollah. And getting to Your Honor's second point with respect to it being an incident that occurred because of someone crossing over into the wrong side, we're really dealing here with a very small country and then a city within that country where Mr. Zogby lived in the chaos of a civil war at that time. And what happened after the civil war, which is in the record, is that Hezbollah's power extended and wasn't contained since 1990, and they are not limited to only half of Beirut, and they operate with the tacit support of the Lebanese government. So I don't think, Your Honor, we're dealing with a situation that was a single incident, and then in this part of a civil – that was part of him just crossing over, and then we don't have to worry about it after that because Hezbollah's power has expanded since that time, or the evidence indicates that it has. In fact, they just won major seats in Parliament in the election. Well, that's not part of the record, I assume. No, I understand. I mean, that's the problem. A lot of the problem – in light of that, Your Honor, and again, I don't want – I think politics being so dynamic, especially in regions of the Middle East, and this court has recently commented that it's very important for us to not sort of sparse out our asylum claims and stuff, but to follow the framework we've established, because that allows us for proper adjudication, because the situations are so fluid when we try to analyze, you know, what is really someone – try to, you know, maybe figure out or speculate what is the real fear of persecution here. Instead, we should apply our legal standards, because that's… Now, see, to me, it's this – it's a very unfortunate situation all the way around, but there's nothing to show that he is targeted, singled out, that they even know about him or could care less about him. That's not correct. He's a 15-year-old boy at the time. It's now been, what, 15 – I mean… Yes, Your Honor. It's been years. That – this court is time and time held again, Your Honor, and that the passage of time standing alone is not enough, because that very often is the – is the fact in our asylum adjudication process. So this court has approached these cases where there's been this long passage of time and said the passage of time is not – standing alone is not enough to diminish the fear of persecution. And again, because of what Judge Fischer just alluded to, who knows really what… Well, I mean, what Judge Fischer just alluded to may or may not be true, but we have been slapped on the wrist cleanly by the Supreme Court for taking into account things that are current. Well, absolutely. I didn't mean to suggest we were going to take it into account. And I – that's why… Political commentary. I'm sure you did. But that's the point. You can't do that. Well, absolutely, Your Honor, and that's why I – that's why I am trying to emphasize that I believe that under the rubric that we've established in this circuit, that what we have is a past persecution case. A 15-year-old boy was stopped by a menacing militia. They threatened to kill him. They whipped him on his back. He had – he sought medical attention. This Court has found persecution in a lot less circumstances. So I think… Well, if we were to agree with you on that point, would we have to send it back for a current development of what country's conditions are now? Well, Your Honor, and I tried to submit a 28-J letter on that because the Court's been very prolific over the last year in immigration cases. And so it seemed like the initial approach was very tied in with Ventura, saying any time there's a country conditions case, we are going to remand because there's a procurement decision by the Supreme Court saying to remand. But then it seems like the Court has evolved that into looking at is there any evidence in the record that would warrant a remand. And in Lopez, which was decided at the time we submitted our briefs, Lopez, the Court, took the position, well, if there's some – if we're not sure about country conditions, we're going to remand. But since that time, it seems like the Court has been more and more reluctant to remand because of, you know, remanding… Cite a case that is prompting that remark. What case are you relying on that would be applicable here to avoid a remand for withholding a removal? Your Honor, if I say – if I advise you of the wrong cases, I'll let you know when I get to my table. But I think Nodom, N-D-O-M, Babala, Coop, all these cases, this Court has decided not to remand when there was no evidence in the record of changed country conditions or the agency had the bite at the apple. In this case, the agency did have a bite at the apple with respect to the well-founded fear, but then the agency really didn't base its decision on any evidence in the record. I've scoured the agency's decision here, and I can't find anything in the immigration judge's decision that alludes to anything in the record. It seems like a lot of what we've come to call conjecture, and that is not enough to establish someone's well-founded fear of persecution has been rebutted. When did you submit your 28-J? I don't seem to have it in my file. Your Honor, just last week we submitted two of them, and one of them spoke to the issue of what would be the proper instructions on remand. And at the time, our briefs actually recommend remand for country conditions, but it seems like since that time there have been a series of cases by this Court where they've determined that remand is not the appropriate remedy when the agency decided a well-founded fear did not exist, and then this Court has reversed, then it says a further evidentiary hearing is not necessary. And I can see, and it seems like our circuit, there might be more, a little bit of conflict on that issue with respect to the remand issue. Okay, thank you. Thank you. May it please the Court, my name is Cindy Farrier, and I'll be representing the Attorney General in this matter. I think as was recognized earlier, the government's position is, in fact, that this one-time incident, while it may have been traumatic for a 15-year-old, does not rise to the level, or does not constitute persecution. The immigration judge noted that it was an action of civil war, civil strife, that occurred on one occasion while the petitioner was going through an area where it was known that was controlled by the Hezbollah. So this is a one-time incident, which the immigration judge concluded would not, again, based upon the country's conditions. And strained his travel, as he did, in fact, when he went back, according to the record, when he went back, he was so fearful that he stayed basically adjacent to the hospital. Correct, so that he didn't experience that treatment again, based upon... What inference do you draw from that? How does that cut? If, in fact, he had this experience, which clearly was motivated, according to the IJ, in part by his religion, because he's Christian, and there's this division that the IJ noted between the three parts of the country and within the city. So now he's confined to a part of Beirut, because if he travels into a prohibited territory under the control of the Hezbollah, just looking at the record before the IJ, the IJ seems to assume, yes, he would be at risk, but his remedy is to stay away from those areas. I think the IJ does make that assumption alternatively. He does say that conditions have eased, and although it is still, at that time, conditions were still up in the air, that if he did fear, he could avoid that fear, essentially, by just avoiding those checkpoints. So I think that the answer to your question is, it could cut either way, the fact that he went back and was there for 18, 19 days, didn't experience any problems, but that was because, as he claims, he didn't ever have to go through any of those checkpoints. So it could cut in favor of the government in the fact that he didn't experience any problems when he went back, but the alternative is, I guess, that he didn't. Yeah, did he leave there? But I think it does show, though, just that he could, in fact, live there and not experience those problems. And as the immigration judge also noted, his parents do visit there fairly often, and while they may be in different circumstances than the petitioner, it does show that they don't have much fear at this point. And the petitioner's own return with his father also seems to indicate that as well, or at least supports the immigration judge's determination. How old is he now? I believe he's 25 or 30, actually. I'm not certain. I believe that he said that he was stopped at the checkpoint in 1990. So, and at that point, he was 15. So, I'm not sure. If the service were willing to act on his petition for adjustment of status, would he be entitled to it? I believe that he has an approved visa petition, but he's not ever entitled to adjustment of status, as that is something that is granted within the discretion of the agency. That is outside of this particular record in the sense that he has not, it wasn't properly before the immigration judge or the court. I understand that, but if there are situations in which the adjustment process could proceed, where we have stayed or we referred it to mediation, what would happen here if we referred it to mediation? Well, I would say that the government is not inclined, that that's not something that we would like to have happen, only because this is a case proceeding on its own on the merits of the asylum application. The adjustment application is outside of this. I understand that. But, and I am not certain because I have not, because that is before the district director. I haven't communicated at all about that particular application. It sounds as though it is still pending with the service, and it hasn't, in fact, been denied or granted at this point, but that they've given the indication that they probably would be inclined not to grant it, and that would be something that would be within their discretion. So, well, inclined not to grant it or just won't act on it? Well, I'm not certain. I'm not certain what he's actually heard. So, and also to answer your question about whether there's anything that the court can do to take it out of him being paroled into the country, that there isn't anything. That was something that, based upon his accepting the advance parole when he came back, he knew that he would be placed in these immigration proceedings as an inadmissible alien, which does, in fact, render him ineligible for adjustment within the context of immigration proceedings. So... So what is the effect, then, of the finding that he abandoned his asylum claim? I would, I would submit that that actually is not, it's really not quite relevant to the court's consideration in the sense that the immigration judge did go on and consider the merits. It almost seemed as though it was sort of an afterthought by the immigration judge, and it didn't affect his consideration of the rest of the case, and where he still went on and made the findings with regard to past persecution and well-founded fear. So this case stands or falls on the... On the merits. Yes, yes. If we were to find that he had been persecuted, should we send it back for an analysis of current country conditions? It should be sent back so that the agency can consider, in the first instance, the country conditions and the effect of also internal relocation, as that was something that the judge spoke of, but didn't actually make a finding on. And it is true that the Ninth Circuit law on remand, whether it's necessary or not necessary, is sort of haphazard, or not haphazard, but... I know, I regret that. I'm sorry about that. But it is, it goes either way. And there is, while there are recent cases which do say you don't need to remand, there are also recent cases which seem to suggest that you should remand. And one of those is Hassan, and another is Lopez, as was cited by Petitioner's counsel. Well, what's the analysis when they say it does not have to be remanded? That it does not, when it does not have to be remanded? What's the rationale there? Well, it seems to be as though if the, I believe that it is, if the immigration judge, well, it goes both ways. I think that if the, if the country conditions haven't been presented, and were not an issue before the immigration judge, and there's, and Department of Homeland Security hasn't commented at all, then we don't need to remand. But also, if the immigration judge has commented and has looked at the country conditions, then we can look at the country conditions as well, and we can say it doesn't need to be remanded. But then there are other cases which says, which say that the immigration judge and the board have looked at these conditions, and so, but made the wrong findings, so we're going to remand so that they can relook at them again. So, so I'm not certain, but our, the government's position is that remand would be appropriate. So, based upon the facts of this record, then the evidence here does not meet the standard which is required to overturn the agency's decision that is, it does not compel that any reasonable fact finder would have to find that the requisite fear of persecution has been met here. So the petition should be denied. Okay. Thank you, counsel, for the matter. This argument will be submitted. And we'll next to your argument in bank one.
judges: B. Fletcher, Rymer, Fisher